We have four appeals that are scheduled for oral argument this morning. The first is the United States of America v. Ka'Deem Sheppard-Sankey. Mackenzie Lunn is here for the appellate Sheppard-Sankey. Joe Fale is here for the United States. And Ms. Mackenzie, you may begin your argument. Counsel, may I please report? The district court is applying the four-level 2K2.1B6B enhancement for using a firearm in connection with another felony offense. There was not reliable and specific evidence in the record to support the court's conclusion that Mr. Sheppard-Sankey's use of firearms occurred in the same time frame as or in connection with an unindicted drug trafficking offense. If the government was able to establish by a preponderance of the evidence that he was involved in the drug trade so that the proximity of the firearms to the drugs establishes the required connection, if the government was able to establish that, then there was no error in applying the enhancement, was there? I think I agree that proximity would be enough if, in fact, the district court did not err in finding that this was a drug trafficking offense. He admitted in his evaluation that he'd been selling drugs since he was 16. His cell phone contained pictures supporting distribution. He had scales and baggies in his car. That's not enough to establish that he was in the drug trade? No, Your Honor. Respectfully, I do not believe it is. There are several reasons why. The first, I think, is this is not a case where it went uncontroverted that 2.8 ounces was necessarily a distribution amount of marijuana. How much marijuana would one use typically be? I don't think the inquiry is, you know, what is typical. I think it's what is typical for this defendant under these circumstances. And Mr. Shepard Sankey argued that 2.8 ounces was for his personal use. And he pointed to evidence in the record demonstrating that he had a habitual daily – he had been a habitual daily user of marijuana since the age of 14. At the time of the offense conduct, he was consuming a half ounce every single day. So, at that rate of 2.8 ounces, that was less than a week's supply for him, given his routine daily consumption. How – what would – what other evidence would you need to find – what you need to find here? Would he have to offer a direct confession that he was involved in trafficking drugs? No, Your Honor. I'm not suggesting that's required. I think the point we're making here is the district court has to take this on a case-by-case basis. And here, the district court specifically told us what it was relying on in applying the enhancement and finding that Mr. Shepard Sankey was engaged in drug trafficking. And I'll note that this is page 26 of the record. It did not rely upon the quantity of marijuana or the presence of scales or even find that the combination of items in the car was sufficient to prove that Mr. Shepard Sankey was engaged in a drug trafficking offense. Instead, it relied upon five items, evidence of smoking that day, the odor of marijuana in the car, Mr. Shepard Sankey's admission that he had smoked daily for nine years, his admission that he sold marijuana between ages 16 and 20, and the evidence on the cell phone. So, I think if we're keeping tally, three of those five items – And the scales and the baggies in his car. Right. Left that out. Yeah. This issue, to me, is borderline frivolous. Right. Your Honor, I don't think it is. But how do you get past, you know, the cell phone evidence where clearly when it says here it's marijuana and it says how much for a zip, $340 a zip, lowest $300 a zip. I mean, there's clearly evidence that he is still dealing in illicit drugs. Your Honor – So, how – the district court made a finding of fact that this is what the evidence showed, and he made that determination. How do we then reverse the district court judge? Your Honor, for those items you just pointed out, the items on the cell phone and Mr. Shepard Sankey's admission, there was no evidence establishing that the drug activity occurred in the same timeframe as his possession of the marijuana. Factual findings that support a sentencing enhancement have to be based on reliable and specific evidence and not speculation. I go back to my question. What else would you need for him in this situation, in your view? Your Honor, I think there would need to be evidence that the drug trafficking activity occurred in the same timeframe as his possession of the firearm. What do you mean by the same timeframe? Do we need a video of him holding the firearm while he's texting, while he's sending that text? No, Your Honor, but I think there needs to be some reliable and specific evidence. And I'd like to parse out a little bit about what we're talking about, about exactly what the evidence showed with respect to the psychological evaluation and the items on the cell phone. With respect to the psyche eval, the evidence was that Mr. Shepard Sankey stopped selling marijuana sometime in 2020, which was nearly two years before the offense conduct in this case. I'm sorry, counsel. May I just ask because you made the suggestion that the cell phone messages were not close in time. But was there not testimony taken before the district court judge and the agent testified? Yes or no? No, Your Honor. The agent did not testify? So what am I reading here from, where the court asked the witness, is it your testimony that these text messages were fairly recent origin? The witness, they were. That's not accurate? I'm not reading correctly? Your Honor, that's correct. But what the court did is defense counsel lodged objection to the officer testifying as to the content of text messages, which were not brought to the courtroom. They were not presented to defense counsel. So he had an opportunity to review them. And I think that the testimony before the district court judge was that this did not come up until the objection was raised by defense counsel, correct? Yes, Your Honor. But the court sustained defense counsel's objection as to that evidence coming in. So the district court relied on that evidence. It committed clear error by relying on facts that it determined were not admissible for that specific purpose. Was there a time frame argument made at the sentencing hearing? Yes, Your Honor, there was. That was something defense counsel emphasized. And the court rejected it. And we have to find that the court findings of fact are clearly erroneous. Your Honor, when we're reviewing the clear error, we need to make sure the district court based its finding upon reliable and specific evidence. And it's our position this evidence was not reliable and specific because there was no evidence demonstrating that it occurred in the same time frame as his possession of the firearm. And I'd like to talk briefly about the items obtained from the cell phone. The government did not establish any time frame for when the photos and messages were taken. While drawing the court's attention to page 14, the agents testified that he could not establish a date for any of the photos taken from the phone. We don't know if they occurred in the same time frame as Mr. Shepard Sankey's possession of a firearm in January 2022 or if they were left over from previous activity back in 2020. We don't even know if Mr. Shepard Sankey actually took those photographs or if there was something he saved as a screenshot. Page 2223, Agent Wilson admitted on cross-examination that he could not tell any of that from the cell bright extraction. So, Your Honor, I think our point here is, you know, this is not a case where we're dealing with two equally reasonable views of the evidence and this court should decline to overturn the one the district court went with. In this case, the district court expressly told us that it was basing its determination on certain pieces of evidence, the evidence from the phone and the evidence in the forensic psyche valve. But in doing so, it's specifically tying its factual determination to evidence that is neither reliable nor specific with respect to the particular issue of Mr. Shepard Sankey's possession of a firearm in January 2022. It seems like the court was pretty generous here. He got a nine-month downward variance from a guideline sentence range, which was 51 to 63 months, and the max was 60 months. And the courts varied downward and sentenced him to 42 months, right? So he understands that if his sentence is vacated because of an error on the part of the district court and it goes back, the court doesn't have to vary downward nine months. He could get a higher sentence if the case goes back. There's some judges in the, not this judge, but some judges in the Southern District of Florida vacated and sent it back. They'll end up with a higher sentence. I mean, that's possible, Your Honor. But I'll point out that the court calculated, you know, as you pointed out, a guideline range of 51 to 60 months and then gave him a modest downward variance of about 18%. But without the four-level enhancement, you know, the guideline range would be 33 to 41 months, and, you know, we would be looking at something that's actually a one-month difference. Well, Your Honor, I think there is quantifiably a difference between the court determining that a downward variance is appropriate and him determining that an upward variance is appropriate. He would have to justify the extent of the variance, upward or downward. And here, all of the facts he's pointing to, the court determined, justified a downward variance. So I don't think we can say that, you know, everything's fine here because he got a slight break. That's open for reconsideration if it goes back, though, isn't it, the downward variance? No, I absolutely agree with that. That would be an issue for the court to determine upon remand. Okay. I would like to briefly, with my remaining time, talk about my second issue, which is the substantive reasonableness of the sentence. And I'll note this court's precedent establishes that the district court abuses its discretion when it gives significant weight to an improper or irrelevant factor. And I'll draw the court's attention to a few things. I think it's clear that the district court gave substantial weight to evidence that was not on the record. Page 57 of the sentencing transcript, the court mentions a 3-year-old named Cheyenne who was killed years previously. Page 60, the court notes there were over 100 murders pending in Montgomery. Also, page 60, the... One of the 3553A factors is the need to protect the public. That's a part of the sentencing calculus, isn't it? Your Honor, that's correct, but the factor is the need to protect the public from future crimes of this defendant. This other evidence, you know, that's not in the record, that Mr. Shepard Sankey did not have an opportunity to address or rebut or distinguish from his case. Effectively, he's being sentenced based on general societal concerns and not of the individualized assessment of the facts presented by his case. That's what the 3553A says, that the need to protect the public has to be confined to the particular defendant being sentenced? To protect the public from future crimes of the defendant, Your Honor. Okay. I see the time has expired. Thank you. Thank you, Ms. Lund. We'll hear from Mr. Fowle on behalf of the government. May it please the court, my name is Joel Fowle. I'm here on behalf of the Middle District of Alabama. In this case, the judge applied the guideline factor 2K21B6B correctly, and the sentence was substantively reasonable, a sentence of 42 months. First, as to the guideline factor, the standard here is clear error. And under this court's precedent, whenever a fact pattern gives rise to two reasonable overconstructions, the fact finder's choice between them cannot be clearly erroneous. That's a quote from Al Medina, a case from 2012. In this case, even if what the defense is saying is a story that can be told about this case, it's not the only one. And looking at all the facts together, the judge made the determination that he believed that the defendant, Mr. Shepard, was, in fact, engaged in trafficking. And you can see the time frame, not only from the text message, but also from the fact that there was a search warrant at his house. At the house was found, among other things, drug trafficking materials. Then you see the search warrant with the cell phone. And in that case, there are pictures, there are text messages, there's all this evidence. And while it's true that the case agent who testified was not a forensic analyst who was able to specifically say when the messages were created or whether the pictures had been downloaded or taken with the phone itself, it is a reasonable inference that all the stuff found on the phone, in connection with the other facts, shows that Mr. Shepard was engaged, in fact, in trafficking. I have a question process-wise. It seems surprising to me that it's not really simple to tell when the text messages were sent. Ordinarily, is that something that is easily available? I think that is something that is usually available. I think that is something that could be found. But it's also the case that if, I mean, I think he was not able to testify to that, so I don't think that that is in evidence in this case. I think it often is. But here I don't think it matters because, again... I'm not saying necessarily that it matters, but I guess was it screenshots of the text messages that don't say the date? I don't completely understand how that even happens. Yes, he was able to actually testify as to the dates of the text messages because he says there's lots of them, and he says on, I think it's page 20, that they were recent in origin. In some of the screenshots and photos, I believe that he's not able to specifically say when they're created. And he's not a forensic analyst. Right, those are the ones that maybe they were taken off the Internet, I think is the allegation. Yes, so the photos, he doesn't know how they were created. Certainly, at least for the photos, he doesn't know how they were created or when they were created necessarily. And I think there you would more than likely than not or usually need a forensic analyst, someone who could really look at it and look at the metadata and be able to say that. Right, but he was able to testify as to the text messages themselves and that they had a pattern, a general pattern, which is that the defendant would be contacted via text message and then asked for a price and what product he had. I mean, he was able to testify as to that, the exchange of text messages between the defendant and those who were contacting him for the purchase of drug product. That is correct, Your Honor. And the amount of the marijuana as well that was found. Before you turn to the amount, what do the text messages reflect with regard to the time frame? He says when asked by the court that they were recent in origin. So they're not from long ago. And there is some, there's an objection, and it gets half overruled and half sustained. But even without that, the fact that they then also do a search of his house and they find drug packaging materials consistent with the photos that were put into evidence shows that this was recent in time. This wasn't something from two, three years ago or something like that that possibly he had been trafficking and had stopped. And it had just, you know, we went way back several years. So what's the connecting thread between that information and the firearm? The connecting thread here is that if he's trafficking, we have lots of evidence to show that he's trafficking and that he has the gun right next to the backpack that has the two bags of marijuana in it. And that shows there's cases such as Bishop that that proximity is enough for the gun enhancement to apply. As for the amount, the amount is far more than in Rembrandt. The amount is 2.8 ounces. And some of the text messages, some of the evidence show that he would sell by the ounce for $300 to $340. And here, this shows that he has quantities that he would distribute. And this is a large quantity. Certainly, if you look at Rembrandt, which is a persuasive case, I believe, there was only 18.6 grams in that case. And 2.8 ounces is, I think, roughly 80 grams. So it's much, much more. And again, this comes down to the fact that it's not that there, even if we can see that there's another story that could be told, the judge's finding here, which he based not only on the factors that his mom cited, but also on everything that the probation officer found in the addendum and the report, shows that there's enough evidence in the record for him to find that this was trafficking. As for the sentence being reasonable, I just want to say, when he's talking, he is clearly referring to all the factors under 3553A, one of which is general deterrence. And so he's talking not only about the seriousness of the offense, which is 3553A2A, reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, but also under 3553A2B, general deterrence is one of the factors that judges are supposed to look at. Another thing to note here, and I think everything he said is perfectly acceptable, he's not speaking solely to the lawyers or to an appellate's record. He's trying to speak not only to the defendant, but to all the people in the courtroom, which included the defendant's family, friends, supporters, and he's trying to explain to them why this crime is serious, why he takes it seriously, and he's trying to speak in language that they will understand, and he's using examples to do that. And I think that was certainly appropriate, and I think his sentence, in fact, was reasonable. Was there a particularized objection to the murder rate discussion? There was not. I do not recall there being one, no. So, therefore, we apply plain error review to this issue? Yes, Your Honor. If there's no further questions, I'd yield the rest of my time. Thank you. Thank you, Mr. Fowle. Fowle, Ms. Lund, you've reserved some time for rebuttal. Yes, Your Honor. Very briefly, there's been a lot of talk that these text messages should be used to buttress the district court's finding, but again, I would like to draw the court's attention to pages 17 through 19 of the sentencing transcript. As soon as the officer starts to testify regarding the text messages, defense counsel lodges an objection, and the district court ultimately sustains that objection. I'm reading from page 19. Okay, I'm going to sustain your objection as to the objection to the PSR. I'm going to overrule your objection as to general information the court can consider. So I think the court is very clearly telling us it ruled that this evidence it was not admitting for the purposes of establishing the applicability of the 2K2.1B6B enhancement. I think it might be permissible for the court to consider it under the 3553A factors, but if I understand some of the court's questions, they were asking, well, why should we not consider this as evidence supporting the enhancement? And then Mr. Feil also noted repeatedly, you know, that they presented all of this evidence that Mr. Shepard Sankey was engaged in drug trafficking. I'll again just note that there's no evidence that he was engaged in drug trafficking as of January 2022 when he was in possession of the firearm. We have the evidence in the cell phone, which, you know, establishes a totally unknown time frame. And then we also have the evidence in the report, the psych evaluation, which establishes that the time frame where he was engaged in distribution activity ended more than two years previously. So I think it's problematic to rely on drug trafficking activity, you know, which at best establishes that he was engaged in drug trafficking two years previously to support an enhancement two years later on. And then finally, with respect to, you know, the packaging materials found, I'll just note again, given the quantity of purchasing and using on a daily basis, someone who is buying this much would also be acquiring this much packaging material. So that could easily be indicative of drug purchasing rather than drug distribution. And then finally, with respect to Your Honor's point that there was not a clear objection to, you know, the district court's reliance on certain factors in its explanation of the sentence, there was an objection as to the reasonableness of the sentence. And I think given that this is a subset of our substantive reasonableness argument, the court should construe that as sufficient to preserve the argument for appellate review. Thank you, Your Honor. Thank you, Ms. Lund and Mr. Feil.